MAINE SUPREME JUDICIAL COURT                      Reporter of Decisions
Decision:    2022 ME 21
Docket:      And-21-262
Argued:      March 9, 2022
Decided:     April 5, 2022

Panel:       STANFILL, C.J., and MEAD, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.*

SULTAN CORPORATION

v.

DEPARTMENT OF ENVIRONMENTAL PROTECTION et al.

MEAD, J.

[¶1]  Sultan Corporation appeals from a decision of the Superior Court (Androscoggin County, *Stewart, J.*) affirming a decision of the Board of Environmental Protection that upheld a cleanup order issued pursuant to 38 M.R.S. § 1365 (2021) by the Commissioner of the Department of Environmental Protection against Sultan for hazardous substances located on its property.  Because the Board did not determine the threshold issue of whether the third-party defense afforded by 38 M.R.S. § 1367(3) (2021) is available to a party seeking to invalidate a Commissioner's order issued pursuant to 38 M.R.S. § 1365, we vacate and remand to the Board to make that determination.

---

\* Justice Gorman sat at oral argument and participated in the initial conference but retired before this opinion was certified.

## I. BACKGROUND

[¶2]  The following facts are derived from the Board's findings, which are supported by competent evidence in the record.  *See Angell Family 2012 Prouts Neck Tr. v. Town of Scarborough,* 2016 ME 152, ¶ 3, 149 A.3d 271.  Sultan purchased the site on June 25, 2003, which contained a fifteen-unit residential apartment building.  Beal's Laundry had operated a dry cleaning facility on the site from approximately 1950 to 1986.  In 2013, as part of its evaluation of former dry cleaning operations, the Department of Environmental Protection conducted testing at the site and discovered perchloroethylene and trichloroethylene—volatile and potentially hazardous organic compounds associated with dry cleaning operations—contaminating the soil and groundwater.  Subsequent testing identified these compounds and their breakdown products beneath the pavement in front of the site, in soil gas beneath the site building, in the indoor air of the site building, in the soil along subsurface utility lines, and in the indoor air of buildings on several surrounding properties.

[¶3]  Following an assessment and recommendation from the state toxicologist, the Commissioner concluded that these chemicals posed a health risk to people living on the site because vapors were found in dangerous

concentrations inside the site's residential units. To mitigate the effects of the vapors and associated hazards on the occupants of the site building, the Department installed and operates a sub-slab depressurization system (SSDS) on the site. The SSDS redirects emanating vapors away from occupied spaces in the building but does nothing to remove the source of the contaminants or prevent their migration to other properties. According to the Department's lead engineer, if the source of the contaminants is not addressed, the high levels of contamination in the soil and groundwater will remain for "generations to come" and the SSDS will need to be maintained indefinitely for the protection of the site's residents. The Commissioner hired a consultant to analyze long-term solutions available for the site. The consultant's report presented seven possible alternatives, each assigned a letter from A through G.

[¶4] On May 10, 2018, the Commissioner issued an order designating the site an uncontrolled hazardous substance site pursuant to 38 M.R.S. § 1365(1). The order identified Sultan as the owner of the site and a responsible party. *See* 38 M.R.S. § 1362(2)(A) (2021). Sultan does not contest that (1) there are hazardous substances on the site; (2) the site is an uncontrolled hazardous substance site; (3) the hazardous substances on the site pose a threat to the

4

health of humans; or (4) as the owner of the site, it is a responsible party as that term is used in 38 M.R.S. § 1362(2)(A).

[¶5] The designation of the site as an uncontrolled hazardous substance site provides the Commissioner the statutory authority to "[o]rder any responsible party dealing with the hazardous substances to cease immediately or to prevent that activity and to take an action necessary to terminate or mitigate the danger or likelihood of danger." 38 M.R.S. § 1365(1)(B). Pursuant to this authority, the Commissioner ordered Sultan to submit a plan for remediation of the site that would implement Alternative E of the consultant's report. Sultan was served with the Commissioner's order on May 24, 2018, and timely appealed to the Board on June 7, 2018. *See* 38 M.R.S. § 1365(4).

[¶6] The Board held a public evidentiary hearing on Sultan's appeal on October 18, 2018.[1] At the hearing, both parties were represented by counsel, presented witnesses, and offered exhibits. In its post-hearing brief, Sultan asserted that it was entitled to the third-party defense[2] found within

---

[1] Both parties waived the hearing deadline prescribed by 38 M.R.S. § 1365(4) (2021).

[2] In its order, the Board referred to the defense afforded by 38 M.R.S. § 1367(3) (2021) as the "third-party defense," although Sultan consistently refers to it as "the innocent landowner defense." We express no opinion as to which moniker is appropriate but adopt the Board's reference for consistency with the judgment before us on appeal.

38 M.R.S. § 1367(3)[3] because Sultan did not cause the hazardous material to arrive on the site but merely purchased the site without knowledge that hazardous materials were present.  In its reply brief, the Commissioner argued that the defense was inapplicable because the May 10, 2018, order Sultan appealed from was issued pursuant to section 1365 and the third-party defense

---

[3] Title 38 M.R.S. § 1367 is titled, "**Liability; recovery by the State for abatement, clean up or mitigation costs and for damages**."  The portions of the statute that provide the defense state, in relevant part:

> A person who would otherwise be a responsible party shall not be subject to liability under this section, if he can establish by a preponderance of the evidence that threats or hazards posed or potentially posed by an uncontrolled site, for which threats or hazards he would otherwise be responsible, were caused solely by:
>
> . . . .
>
> . . . An act or omission of a 3rd party who is not that person's employee or agent. A person seeking relief from liability for the acts or omissions of a 3rd party shall also demonstrate by a preponderance of the evidence that that person exercised due care with respect to the hazardous substance and uncontrolled site concerned, taking into consideration the characteristics of that substance and site, in light of all relevant facts and circumstances and that that person took precautions against foreseeable acts or omissions of any such 3rd party and the consequences that could foreseeably result from such acts or omissions.
>
> **A.** For purposes of this subsection, a person may demonstrate the exercise of due care with respect to any uncontrolled site that that person has acquired after hazardous substances were located on that uncontrolled site, if that person shows that at the time that person acquired the uncontrolled site the person did not know and had no reason to know that any hazardous substance that is the subject of the release or threatened release was disposed on, in or at the uncontrolled site.
>
> **B.** To establish that a person meets the criteria of paragraph A, a person must have undertaken, at the time of acquisition, all appropriate inquiry into the previous ownership and uses of the property consistent with good commercial or customary practice in an effort to minimize liability. . . .

38 M.R.S. § 1367(3).

is only available as a shield from liability for costs that the State seeks to recoup from a responsible party pursuant to section 1367. The Commissioner also argued that, even if the defense were available, Sultan had still failed to prove by a preponderance of the evidence that it met the elements of the defense. *See* 38 M.R.S. § 1367.

[¶7] On January 17, 2019, the Board denied Sultan's appeal and upheld the Commissioner's remediation order with modifications. The Board expressly declined to reach the issue of whether, "as a matter of law," the third-party defense was available to Sultan in an appeal of a section 1365 order because the Board concluded that even if the defense were available, Sultan had failed to meet its burden to prove the elements of the defense by a preponderance of the evidence. On February 14, 2019, Sultan timely appealed the Board's decision to the Superior Court. *See* M.R. Civ. P. 80C(b); 5 M.R.S. § 11002(3) (2021). On July 30, 2021, the court (*Stewart, J.*) affirmed the Board's decision. Sultan timely appealed. *See* 5 M.R.S. § 11008(1) (2021); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶8] Sultan argues that the Board erred in failing to hold that the third-party defense was available in the present action. As noted above, the

Board declined to determine whether the third-party defense was available to a responsible party subject to a section 1365 order from the Commissioner. Rather, it stated that it had "considered the arguments of the parties but [found] that it did not need to decide, as a matter of law, whether the third-party defense is available to Sultan . . . because . . . even if [the defense was] available, Sultan ha[d] not met its burden to prove all the elements of the third-party defense."

[¶9]  "Where the Superior Court acts as an intermediate appellate court, we review directly the Board's decision for abuse of discretion, error of law, or findings unsupported by substantial evidence in the record."  *City of Old Town v. Expera Old Town, LLC,* 2021 ME 23, ¶ 13, 249 A.3d 141 (alteration and quotation marks omitted).  "'[I]n dealing with a determination or judgment [that] an administrative agency alone is authorized to make, a court must judge the propriety of such action solely by the grounds invoked by the agency.  If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.'"  *Me. Motor Rate Bureau,* 357 A.2d 518, 527 (Me. 1976) (alteration omitted) (quoting *SEC v. Chenery Corp.,* 332 U.S. 194 (1947)). "Courts need to know what an agency has really determined in order to know

even what to review." *Gashgai v. Bd. of Registration in Med.,* 390 A.2d 1080, 1085 (Me. 1978). "[W]e will not substitute our judgment for the Board's." *Rossignol v. Me. Pub. Emps. Ret. Sys.,* 2016 ME 115, ¶ 6, 144 A.3d 1175.

[¶10] An affirmative defense is an "assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." *Affirmative Defense*, Black's Law Dictionary (11th ed. 2019). If the section 1367(3) third-party defense is available in Department proceedings under section 1365, and if Sultan both affirmatively asserts it and satisfies its burden of proof, Sultan could seek relief from the Commissioner's order to remediate the hazardous substances located on the site. Alternatively, if the third-party defense is unavailable in Department proceedings under section 1365, the Board need not and should not consider evidence relating to those issues. The question of whether the defense is available is thus a threshold issue that must be determined before the Board or the court can proceed to consider the merits of the defense.

[¶11] Because the Board failed to determine the availability of the third-party defense against a Commissioner's order issued pursuant to a different section of Title 38, chapter 13-B, we are "powerless to affirm the administrative action." *Me. Motor Rate Bureau,* 357 A.2d at 527 (quotation

marks omitted). We vacate the portion of the Board's order in which the Board declined to address the availability of the third-party defense and do not reach the remainder of the issues presented on this appeal. We remand for the Board to address the threshold question of whether the section 1367(3) third-party defense is available in proceedings under section 1365. Once the Board addresses the availability of the defense and adequately sets forth the basis for its decision, *see Palian v. Dep't. of Health & Hum. Servs.,* 2020 ME 131, ¶ 41, 242 A.3d 164, it need go no further.[4]

The entry is:

> Judgment vacated in part. Remanded to the Superior Court for remand to the Board of Environmental Protection for further proceedings limited to the issue of the availability of the defense afforded by 38 M.R.S. § 1367(3) to other subsections within Title 38, chapter 13-B.

---

[4] If the Board concludes that the third-party defense afforded by section 1367(3) is available to Sultan, it's original conclusion that Sultan had not met its burden of proving the defense would then become ripe for review. *See Avangrid Networks, Inc. v. Sec'y of State,* 2020 ME 109, ¶ 37 n.11, 237 A.3d 882.

Theodore A. Small, Esq. (orally), Skelton, Taintor & Abbott, Lewiston, for appellant Sultan Corp.

Aaron M. Frey, Attorney General, Margaret A. Bensinger, Asst. Atty. Gen. (orally), and Jeffrey M. Skakalski, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellees Department of Environmental Protection at el.

Androscoggin County Superior Court docket number AP-2019-03
FOR CLERK REFERENCE ONLY